738 A.2d 993

COMMONWEALTH of Pennsylvania, Appellee,

v.

Frederick W. PETROLL, Appellant.

Supreme Court of Pennsylvania.

Argued April 30, 1998.

Decided July 22, 1999.

568

Barrie L. Wellener, Asst. Public Defender, James J. Karl, Public Defender, for Frederick W. Petroll.

Joseph C. Madenspacher, Dist. Atty., Susan E. Moyer, Asst. Dist. Atty., Donald R. Totaro, Lancaster, for Com.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

*OPINION*

NEWMAN, Justice.

*FACTS AND PROCEDURAL HISTORY*

On May 15, 1996, a jury found Fredrick W. Petroll (Appellant) guilty of three counts of homicide by vehicle,[1] one count of failing to drive a vehicle at a safe speed,[2] and one count of careless driving.[3] The trial court sentenced Appellant to concurrent terms of imprisonment of between eighteen (18) months and thirty-six (36) months for each count of homicide by vehicle. Appellant filed a timely appeal to the Superior Court, raising six issues, and the Superior Court affirmed. The present appeal questions whether the warrantless searches of Appellant's tractor-trailer and subsequent seizures of evidence violate Article I, Section 8 of the Pennsylvania Constitution and the Fourth Amendment to the United States Constitution. Though we disagree, in part, with the Superior Court's analysis, we affirm the order of the Superior Court, affirming Appellant's judgment of sentence.

On April 21, 1995 at 3:35 p.m., Appellant, in his employ as a commercial truck driver, was operating a tractor-trailer on Route 30 in Manheim Township, Lancaster County. Although the traffic had stopped on Route 30, Appellant drove his truck into the rear of a Chevrolet Lumina driven by Douglas Harsh, and also occupied by his wife, Connie Harsh, and their infant son, Tyler Harsh. The initial collision resulted in a chain reaction involving three other vehicles. The impact from Appellant's truck caused the Harsh vehicle to burst into flames. The Harsh family was unable to escape the mangled vehicle, which had become engulfed in fire. At the accident scene, Dr. Barry Walp, the Lancaster County Coroner, pronounced the three occupants dead. Dr. Wayne Ross, the Lancaster County Forensic Pathologist, performed autopsies

1. 75 Pa.C.S.A. § 3732.
2. 75 Pa.C.S.A. § 3361.
3. 75 Pa.C.S.A. § 3714.

on the victims, concluding that they had died of thermal burning and smoke inhalation, caused by the fire.

Officer Jeffery Jones was the first officer to arrive at the accident scene. He testified at the suppression hearing that, based on his observations and his training in advanced accident investigations, he immediately suspected that excess speed was an issue. (N.T. Suppression Hearing, 5/6/96, at pp. 66–67). Officer Jones also testified at the trial as an expert in accident reconstruction. After considering the condition of the road and the height of the vehicle, Officer Jones concluded that Appellant should have seen the stopped traffic from a distance of 1500 feet. (N.T. Trial, 5/13/96, at pp. 416–17). Appellant's tractor-trailer left skid marks of 96.5 feet before colliding with the Harsh vehicle and about seventy (70) feet of skid marks after impact. (N.T. Trial, 5/13/96, at pp. 393, 409–10). Based on the length of the skid marks, Officer Jones concluded that Appellant applied his brakes, or his brakes responded, when the front of Appellant's truck was only thirty-six (36) feet from the Harsh vehicle. (N.T. Trial, 5/13/96, at p. 410). Initially, Officer Jones determined that Appellant was speeding more than seventy (70) miles per hour, but he recalculated his estimate to opine that Appellant was driving at least fifty-two (52) miles per hour in an area governed by a speed limit of fifty (50) miles per hour. (N.T. Trial, 5/13/96, at pp. 407, 437–49). Even with the revised calculation, Appellant would have started his skid less than one second before colliding with the victims' vehicle. (N.T. Trial, 5/13/96, at pp. 410–11).

Besides hearing Officer Jones's opinion concerning Appellant's possible speeding and carelessness, the jury heard testimony from other witnesses that provided evidence of Appellant's guilt. Carla Cwynar, a medical technician who responded to the accident, testified that while she was treating Appellant at the accident scene, he admitted to her that he fell asleep at the wheel, awoke moments before the collision, and could not stop the truck in time.[4] (N.T. Trial,

4. The medical technician did not inform the police of Appellant's admission until one (1) week after the accident. (N.T. Suppression Hearing, 5/6/96, at 44–45).

5/10/96, at p. 258). One motorist stated that, immediately before the accident, he observed Appellant slouched forward in his seat. (N.T. Trial, 5/9/96, at pp. 90, 110). The same witness, who was a former commercial truck driver, estimated that Appellant was well over the speed limit, driving close to seventy (70) miles per hour. (N.T. Trial, 5/9/96, at pp. 93–94). Two other motorists gave eyewitness accounts that, just before the collision, Appellant was travelling over fifty (50) miles per hour. (N.T. Trial, 5/9/96, at pp. 125, 184). All of the eyewitnesses testified that Appellant took no evasive actions prior to impact. (N.T. Trial, 5/9/96, at pp. 94, 126–27, 185).

The trial court also admitted physical evidence introduced by the Commonwealth, which the police had seized from the tractor-trailer. Responding to a dispatch, Sergeant Dale McCurdy arrived at the accident scene. The victim's car was still ablaze, and Appellant's tractor-trailer was on the road but facing the median and on an incline. The officer approached the truck to assure that the emergency brake was set. When he got within three (3) to five (5) feet of the tractor-trailer, he observed a radar detector attached to the dashboard, which caught his attention because he was aware that federal law prohibits commercial drivers from using or possessing radar detection devices. (N.T. Suppression Hearing, 5/6/96, at p. 29; N.T. Trial, 5/10/96, at p. 235); *see* 49 C.F.R. § 392.71. *See also* 67 Pa.Code §§ 229.181, 231.181 (incorporating by reference 49 C.F.R. § 392.71). Sergeant McCurdy entered the cab and set the emergency brake, but he did not seize the radar detector.

Unaware that Sergeant McCurdy had already set the emergency brake, Sergeant Gary Metzger testified that he also entered the cab to set the brake, look for missing or broken components, and to obtain any documents that state or federal law requires drivers to maintain. (N.T. Suppression Hearing, 5/7/96, at pp. 114–15; N.T. Trial, 5/10/96, at pp. 245–46). Sergeant Metzger discovered and seized a driver's logbook, a bank bag, which contained toll receipts, and a brown bag, which contained shipping invoices and other documents. (N.T.

Suppression Hearing, 5/7/96, at pp. 117–18; N.T. Trial, 5/10/96, at pp. 247–48). The police impounded the truck and, on May 16, 1995, the police seized the radar detector from the vehicle. (N.T. Suppression Hearing, 5/6/96, at p. 76).

Appellant moved to suppress the seized evidence, which the suppression court denied. The trial court admitted the items as relevant evidence to prove that Appellant was guilty of homicide by vehicle. To establish homicide by vehicle, the prosecution must show beyond a reasonable doubt that the person "unintentionally cause[d] the death of another person while engaged in the violation of any law of this Commonwealth or municipal ordinance applying to the operation or use of a vehicle or to the regulation of traffic except section 3731 (relating to driving under the influence of alcohol or controlled substance) . . . when the violation is the cause of death." 75 Pa.C.S.A. § 3732. The prosecution used the seized items to show that violations of state law by Appellant resulted in the deaths of the victims.

The admissibility of the testimony of the Commonwealth's accident reconstructionist, the medical technician, and the three eye witnesses is not before us. We have granted review of this case solely to determine whether the trial court erred in denying Appellant's motion to suppress the evidence seized from Appellant's tractor-trailer during the course of the two warrantless searches.

## ANALYSIS

When we review the ruling of a suppression court, we must ascertain whether its factual findings are supported by the record and whether the inferences and legal conclusions drawn from those facts are reasonable. *Commonwealth v. Lewis*, 535 Pa. 501, 504, 636 A.2d 619, 621 (1994). Where the defendant challenges an adverse ruling of the suppression court, we will consider only the evidence for the prosecution and whatever evidence for the defense that remains uncontradicted in context of the whole record. *Id.* If there is support on the record, we are bound by the facts as found by the

suppression court, and we may reverse that court only if the legal conclusions drawn from these facts are in error. *Id.*

 Article I, Section 8 of the Pennsylvania Constitution [5] and the Fourth Amendment to the United States Constitution [6] generally prohibit the police from searching a person or his or her property and seizing personal items without a search warrant. A search warrant indicates that the police have convinced a neutral magistrate upon a showing of probable cause, which is a reasonable belief, based on the surrounding facts and totality of circumstances, that an illegal activity is occurring or evidence of a crime is present. *See Commonwealth v. Jones,* 542 Pa. 418, 424, 668 A.2d 114, 116–17 (1995). A search without a warrant may be proper where an exception applies and the police have probable cause to believe a crime has been or is being committed. *See Commonwealth v. Riedel,* 651 A.2d 135, 139 & n. 1, 539 Pa. 172, 179 & n. 1 (1994) (noting that exceptions include actual consent, implied consent, search incident to arrest, exigent circumstances); *Commonwealth v. Gibson,* 536 Pa. 123, 129–30, 638 A.2d 203, 206 (1994). Even absent probable cause, some searches without warrants do not violate state or federal constitutional privacy rights. *Commonwealth v. Morris,* 537 Pa. 417, 644 A.2d 721, *cert. denied, Morris v. Pennsylvania,* 513 U.S. 1031, 115 S.Ct. 610, 130 L.Ed.2d 519 (1994) (protective search); *Colorado v. Bertine,* 479 U.S. 367, 371–72, 107 S.Ct. 738, 740–41, 93 L.Ed.2d 739 (1987) (inventory search); *New York v. Burger,* 482 U.S. 691, 702–703, 107 S.Ct. 2636, 2643–44, 96 L.Ed.2d 601 (1987) (administrative search of a closely regulated business).

**5.** The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant. Pa. Const. art. 1, § 8.

**6.** The right of people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized. U.S. Const. amend. IV.

Appellant claims that because the police lacked probable cause to believe that he was involved in a criminal activity or possessed contraband, and no exception to the warrant requirement applied, their warrantless searches and seizures of items from his tractor-trailer were unconstitutional violations of his reasonable expectation of privacy. The trial court held that (1) the "plain view" exception justified the seizure of the radar detector and (2) Pennsylvania and federal statutes, regulations, and common law authorized both the search and seizure of the logbook and the two bags. While the Superior Court upheld both the searches of the truck at the accident scene and at the impoundment lot and the seizure of the radar detector, it concluded that the seizures of the logbook and the two bags were unconstitutional. It reasoned that the seizures were outside of the scope of the statutes, which only advise drivers of their susceptibility to inspections without search warrants. We now confirm that the search and seizure of the radar detector were proper, but the trial court committed legal error by not suppressing the other seized items.

### Radar Detector

If a police officer views an object from a lawful vantage point, and the incriminating nature of the object is immediately apparent to the officer, a warrantless seizure of the object is justified. *Commonwealth v. Ellis*, 541 Pa. 285, 297, 662 A.2d 1043, 1049 (1995). There can be no reasonable expectation of privacy in an object that is in plain view. To judge whether the incriminating nature of an object was immediately apparent to the police officer, reviewing courts must consider the totality of the circumstances. *Id.* (citing *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)).

The Superior Court correctly stated why it was reasonable for Officer Jones to seize the radar detector.

[T]he officer viewed the radar detector on the truck's dashboard from his lawful vantage point outside of the truck. He immediately recognized that possession of a radar detector constitutes a violation of federal law. 49 C.F.R. § 392.71 ("No driver shall use a radar detector in a com-

mercial motor vehicle, or operate a commercial motor vehicle that is equipped with or contains any radar detector"). *See also* 67 Pa.Code §§ 229.181, 231.181 (incorporating by reference 49 C.F.R. § 392.71); 67 Pa.Code § 229.3 (incorporating by reference 49 C.F.R. § 390.5 (relating to definition of radar detector)). The incriminating nature of the evidence was, therefore, immediately apparent to the officer. Accordingly, the warrantless seizure of the radar detector at that point would have been permissible under the plain view doctrine. We are not persuaded that the seizure became impermissible because it was delayed until a time when the truck was impounded.

*Commonwealth v. Petroll,* 696 A.2d 817, 825 (Pa.Super.1997) (case citation omitted). Sergeant McCurdy testified that he saw the radar detector from the median of the road,[7] immediately knew that its possession or use by a commercial driver was illegal, and he relayed what he had seen to Officer Jones, who directed the owner of the impoundment lot to seize the contraband. (N.T. Suppression Hearing, 5/6/96, at p. 29–32). The totality of the circumstances gave the police probable cause to seize the radar detector.

### Logbook and Two Bags

To support the propriety of the seizures and searches of the logbook, bank bag, and brown bag, the Commonwealth avers that because the trucking industry is a closely regulated industry, commercial drivers have a lesser expectation of privacy in their vehicles and their contents. Its argument follows that the police officers conducted proper seizures and searches of Appellant's logbook and two bags pursuant to a statutory scheme to promote the safe operation and maintenance of his commercial vehicle.[8]

---

**7.** Despite undisputed facts on the record that Sergeant McCurdy first viewed the radar detector from the road, the trial court stated that he originally saw the apparatus when he entered the truck's cab. Trial Court Opinion, 11/7/96, at pp. 4–5. Regardless of whether Sergeant McCurdy was on the road or in the cab when he observed the radar detector, he was legitimately at both places.

**8.** Although there are other exceptions to the warrant requirements of Article 1, Section 8 and the Fourth Amendment, the Commonwealth

 While it is well established that the police must possess probable cause to search a business premise when there is suspicion of illegal activity, an administrative search does not always require a showing of probable cause. *See Commonwealth, Department of Environmental Resources v. Blosenski Disposal Service,* 523 Pa. 274, 281–85, 566 A.2d 845, 848–50 (1989); *Commonwealth v. Slaton,* 530 Pa. 207, 214–15, 608 A.2d 5, 8–9 (1992); *Burger,* 482 U.S. at 702–703, 107 S.Ct. at 2643–44. An owner of a business may not enjoy an expectation of privacy equal to that of a personal residence. *See Blosenski,* 523 Pa. at 281, 566 A.2d at 848; *Burger,* 482 U.S. at 699, 107 S.Ct. at 2642. In the name of protecting the public's welfare, the government often weaves an intricate web of regulatory scrutiny. Some industries have such a true history of government oversight that owners of those closely regulated businesses should have little or no expectation of privacy. *Burger,* 482 at 700, 107 S.Ct. at 2642. Depending on the statutory scheme, owners of certain closely regulated businesses should expect that their businesses would be subject to warrantless administrative searches. *See, e.g., Blosenski,* 523 Pa. 274, 566 A.2d 845 (solid waste management industry); *Burger,* 482 U.S. 691, 107 S.Ct. 2636, 96 L.Ed.2d 601 (automobile junk yard business); *Donovan v. Dewey,* 452 U.S. 594, 101 S.Ct. 2534, 69 L.Ed.2d 262 (1981) (mining industry); *United States v. Biswell,* 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972) (gun dealers); *Colonnade Catering Corp. v. United States,* 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60 (1970) (liquor industry and related retailers). According to the United States Supreme Court, a search without a warrant of a closely regulated business will be reasonable if it satisfies the following three criteria:

> First there must be a "substantial" government interest that informs the regulatory scheme pursuant to which the inspection is made....

> Second, the warrantless inspection must be "necessary to further [the] regulatory scheme...."

does not suggest, nor do we find, that any apply to the seizures and searches of the logbook and two bags in this case.

Finally, "the statute's inspection program, in terms of the certainty and regularity of its application, [must] provid[e] a constitutionally adequate substitute for a warrant." In other words, the regulatory statute must perform the two basic functions of a warrant: it must advise the owner of the commercial premises that the search is being made pursuant to the law and has a properly defined scope, and it must limit the discretion of the inspecting officers.

*Burger*, 482 U.S. at 702–703, 107 S.Ct. at 2644 (citations omitted).

 Courts should treat a business as closely regulated, if the statutes and regulations governing it are "sufficiently comprehensive and defined, so that the owner of commercial property cannot help but be aware that his property will be subject to periodic inspections undertaken for specific purposes." *Id.* at 705 n. 16, 107 S.Ct. at 2645 n. 16 (quoting *Donovan*, 452 U.S. at 600, 101 S.Ct. at 2539). We agree with the trial court and the Superior Court that trucking is a closely regulated industry. *See Commonwealth v. Pollock,* 414 Pa.Super. 66, 78, 606 A.2d 500, 506 (1992), *alloc. denied,* 533 Pa. 618, 619 A.2d 700 (1993); *Commonwealth v. Berry,* 305 Pa.Super. 8, 12–14, 451 A.2d 4, 6–7 (1982); *V–1 Oil Co. v. Means,* 94 F.3d 1420, 1425–26 (10th Cir.1996); *United States v. Dominguez–Prieto,* 923 F.2d 464, 468 (6th Cir.), *cert. denied,* 500 U.S. 936, 111 S.Ct. 2063, 114 L.Ed.2d 468 (1991). *See also United States v. Shaefer, Michael and Clairton Slag, Inc.,* 637 F.2d 200 (3d. Cir.1980) (suggesting that trucking industry in Commonwealth is closely regulated industry but reversing on other grounds). The trial court and the Superior Court cite a variety of state and federal statutes and regulations to support their conclusion but primarily rely on a chapter of the Motor Vehicle Code entitled "Inspection of Vehicles." 75 Pa.C.S. § 4701 *et seq.* The courts examined the following provisions of Section 4704 of the Motor Vehicle Code, which provide in relevant part:

§ 4704. *Inspection by police or Commonwealth personnel*

(a) *Authority to inspect.—*

. . .

(3) *Probable cause.—*

(i) Any State Police officer or qualified Commonwealth employee having probable cause to believe that a vehicle, driver, documents, equipment or load are [sic] unsafe, not equipped as required or otherwise not in compliance with the law or regulations may inspect the vehicle, driver, documents, equipment or load.

(ii) Any police officer having probable cause to believe that a vehicle or its equipment is unsafe, not equipped as required or otherwise not in compliance with the law or regulations may inspect the vehicle or its equipment.

. . .

(d) *Authority of police and qualified Commonwealth employees.—*Any police officer or qualified Commonwealth employee shall be authorized to detain and inspect any sealed or unsealed vehicle, container or shipment which they have probable cause to believe may be in violation of the law or Commonwealth regulations while in transit or in maintenance facilities, terminals or other public or private property to ascertain if commodities or materials are being unloaded, stored or transported in an illegal manner; to inspect contents; to.inspect and copy documents and otherwise to ensure compliance with the law and Commonwealth regulations, except that only State Police and qualified Commonwealth employees shall have the authority to enforce any law or regulation pertaining to drivers, including, but not limited to, minimum driver qualifications, maximum hours of service and driver records, or pertaining specifically to hazardous materials.

75 Pa.C.S. § 4704(a)(3), (d). *See also* 67 Pa.Code § 229.364 (implementing 75 Pa.C.S. § 4704). The trial court also cited Section 6308(b) of the Motor Vehicle Code, which provides:

Whenever a police officer is engaged in a systematic program of checking vehicles or has articulable and reasonable grounds to suspect a violation of [the Motor Vehicle Code] he may stop a vehicle, upon request or signal, for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or en-

gine number or the drivers license, or to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of [the Motor Vehicle Code].

75 Pa.C.S. § 6308(b). Based on the observations made by the police at the accident scene, the trial court found that the police had a reasonable and articulable suspicion to believe that Appellant had violated the Motor Vehicle Code by driving at an excessive speed. This suspicion permitted the police to obtain from the already stopped tractor-trailer Appellant's registration, license, proof of insurance, and information related to speeding.

State and federal regulations require drivers of commercial vehicles to maintain and possess a logbook, which details, among other information, the driver's daily time and mileage of travel for one week. 67 Pa.Code § 229.343; 49 C.F.R. § 395.8. *See also* 75 Pa.C.S. § 6103(c) (authorizing Penn. D.O.T. to adopt federal statutes or regulations relating to vehicles or drivers). The Commonwealth has adopted the federal rule, setting a maximum time allowable for commercial driving. 67 Pa.Code § 229.341; *see* 49 C.F.R. § 395.3 (establishing driving time limits).

 Our first step is to analyze the specific statutory scheme regulating the trucking industry to comprehend whether it advances a substantial government interest. The prosecution contends that requiring the maintenance of logbooks and allowing the inspection of logbooks and other driver documents promotes safe travel throughout the Commonwealth. There can be no dispute that the Commonwealth has a substantial interest in regulating the trucking industry for public safety.[9] An examination of a logbook may disclose

9. In 1997 in Pennsylvania, there were 1557 vehicular fatalities, and 196 of those deaths involved tractor-trailers. National Highway Transportation and Safety Administration, Fatality Analysis Reporting System, Query Wizard, *Total Fatalities by Posted Speed Limit and Rural vs. Urban* (visited on July 19, 1999) http://www-fars.nhtsa.dot.gov/www/cfm/wizard/frame.cfm?qryID=PER1;> National Highway Transportation and Safety Administration, Fatality Analysis Reporting System, Query Wizard, *Total Fatalities Involving Large*

whether a commercial driver has exceeded the number of hours of operation permitted by law, which might cause fatigue. A review of shipping invoices, toll receipts, and other documents may reveal the accuracy of the logbook.

The second question of the *Burger* test is whether every warrantless inspection of a driver's logbook and related documents serves to protect drivers or passengers from the dangers associated with exhaustion, overweight loads, or failing equipment. Additional scrutiny of Section 4704 reveals that the legislature did not intend to authorize the police to conduct searches without warrants of the contents of every commercial vehicle involved in a traffic violation. The trial court and Superior Court erred by analyzing some parts of the inspection statute, while ignoring other parts. When interpreting one section of a statute, courts must not read that section without reference to the other sections. 1 Pa.C.S. § 1922; *Cellucci v. General Motors Corporation,* 550 Pa. 407, 414, 706 A.2d 806, 809 (1998). Subsection 4704(a)(1) gives police and officials "engaged in weighing vehicles" the authority to inspect a vehicle's equipment to determine whether the vehicle meets weight and load requirements. 75 Pa.C.S. § 4704(a)(1). Subsection 4704(a)(2) authorizes police and officials "engaged in a systematic inspection program" to inspect vehicles, drivers, documents, equipment, and load to ascertain compliance with Penn D.O.T. regulations. 75 Pa.C.S. § 4704(a)(2).

Viewed in its entirety, Section 4704 is intended to allow police or other authorities to inspect vehicles for ongoing violations of the Motor Vehicle Code to prevent future harm. Section 4704(a)(1) enables the police to stop and inspect tractor-trailers to avert potential accidents. Similarly, Section 4704(a)(2) permits police or other qualified state officials to execute an established vehicle inspection program. Such an inspection program attempts to remove unsafe vehicles from the roadways before an accident occurs. *Cf. Pollock,* 414 Pa.Super. 66, 78, 606 A.2d 500, 506 (holding that 75 Pa.C.S. § 4981(a) and 75 Pa.C.S. § 6308(b) permit police to stop,

*Trucks by State* (visited on July 19, 1999) <http://www-fars.nhtsa.dot.gov/www/cfm/wizard/frame.cfm?qryID=PER3>.

weigh, and measure vehicles); *Commonwealth v. Berry*, 305 Pa.Super. 8, 14, 451 A.2d 4, 7 (1982) (requiring articulable and reasonable suspicion that vehicle is overweight to make stop); *American Trucking Associations, Inc. v. Larson*, 683 F.2d 787, 799 (3d Cir.), *cert. denied*, 459 U.S. 1036, 103 S.Ct. 448 (1981) (finding that public safety was a reasonable basis for tractor-trailer inspection program pursuant to 75 Pa.C.S. § 4703(a)(2)).

■■■■ Likewise, Section 6308(b) cannot authorize an administrative search without a warrant of the items seized in the present facts. Section 6308(b) provides that when an officer has reasonable and articulable suspicion of a Motor Vehicle Code violation, he may stop the vehicle involved for the purpose of "checking" specifically enumerated documents or "to secure" other information that he believes is reasonably necessary to enforce the Motor Vehicle Code. 75 Pa.C.S. § 6308(b). While this statute permits the police to make an investigatory stop in light of an articulable and reasonably perceived violation and request specific documents, such as a registration and license, it does not give the police unlimited discretion to search a vehicle or driver for evidence of a crime. Accordingly, we conclude that Section 6308(b) does not empower the police, who are investigating a commercial driver for vehicular homicide, possibly caused by speeding, to conduct a warrantless search of his logbooks or other documents, which are kept to detail hours and expenses of operation.

■■■■ To appreciate the reasonableness of a general search, courts must balance the individual's expectation in privacy against the government's compelling interests, such as public safety. *See Commonwealth v. Cass*, 551 Pa. 25, 53–55, 709 A.2d 350, 364–5, *cert. denied, Cass v. Pennsylvania*, —— U.S. ——, 119 S.Ct. 89, 142 L.Ed.2d 70 (1998). Warrantless administrative searches of logbooks and travel-related receipts of commercial drivers who have been involved in accidents do not further the statutory scheme of inspecting commercial vehicles and drivers for weight, equipment, and load violations. The Commonwealth argues that inspections without warrants

of truck drivers' logbooks, invoices, and receipts enable the police to remove from the road unsafe drivers who are exhausted. The critical flaw of this argument is that warrantless inspections of logbooks and travel receipts cannot prevent accidents that have already occurred and will not reoccur. The aforementioned provisions of the Motor Vehicle Code are limited to vehicle and driver inspections to prevent future harm. Any other reading would be overly expansive. In view of the fact that the police had detained Appellant and were going to impound his tractor-trailer, they had already taken a potentially dangerous vehicle or driver off the road. Because a post-accident, warrantless inspection of Appellant's logbook and related documents could not advance the objective of the statutes, the police lacked a reasonable basis to conduct such a search.

The closely regulated business exception to the probable cause and warrant requirements is not applicable in criminal cases. The police cannot conduct a warrantless administrative search to advance a criminal investigation under the pretext of addressing a specific, compelling governmental interest advanced by a statutory scheme. *See Slaton,* 530 Pa. at 214, 608 A.2d at 8; *Commonwealth v. Hudak,* 710 A.2d 1213, 1217 (Pa.Super.1998); *Burger,* 482 U.S. at 717 n. 27, 107 S.Ct. at 2651 n. 27 (finding no evidence that administrative search was pretext to locate evidence of crime).[10] The Supreme Court of the United States has held that a valid administrative search without a warrant that uncovers evidence of a crime does not violate the Fourth Amendment. *See Burger,* 482 U.S. at 716, 107 S.Ct. at 2651 (upholding administrative search of automobile junk yard, which resulted in charges for unlicensed operation of facility and possession of stolen vehicles); *Biswell,* 406 U.S. at 312–13 & n. 2, 92 S.Ct. at 1594–95 & n. 2 (upholding administrative inspection of pawn-

10. *Compare Whren v. United States,* 517 U.S. 806, 811–13, 116 S.Ct. 1769, 1773–74, 135 L.Ed.2d 89 (1996) (distinguishing administrative searches, where probable cause is not always necessary, from warrantless seizure of narcotics seen in plain view by police, who were conducting legitimate traffic stop, even though police may have had ulterior, or coexistent, motives).

shop, which culminated in charges for record keeping violations, tax evasion, and possession of unlicensed firearms). That holding is supported by Article 1, Section 8 of the Pennsylvania Constitution. A regulatory statute may have the effect of deterring criminal activity and still not conflict with either state or federal warrant requirements. The line between administrative regulation and criminal deterrence is easily blurred, and we will not find an administrative statute unconstitutional merely because it has the "same ultimate purpose as penal laws." *See Burger,* 482 U.S. at 713–16, 107 S.Ct. at 2649–51.

The facts in this case, however, suggest that the police used Section 4704 or 6308(b) of the Motor Vehicle Code as a pretext to conduct a search to advance their criminal investigation of Appellant. We agree with the Superior Court that the officers were legitimately present at the accident scene to both secure the area and investigate the possible causes of the collision. Furthermore, the length of the skid marks, indicating a failure to brake in a timely manner, and the clarity of the day gave the police sufficient reason to enter the empty truck to check the emergency brake and related equipment. Yet, the exigent circumstances that allowed the officers to enter the truck for the limited purpose of checking equipment to prevent further harm did not permit the police to seize and search Appellant's logbook and two bags.

It is also the position of the Commonwealth that if the police had to obtain a warrant before inspecting the documents at issue, truck drivers might alert noncompliant drivers of impending inspections, giving them an opportunity to update or alter their records, which would frustrate the regulatory requirements. *See Burger,* 482 U.S. at 710, 107 S.Ct. at 2648; *Donovan,* 452 U.S. at 603, 101 S.Ct. at 2540; *United States v. Dominguez–Prieto,* 923 F.2d at 469. It is specious to think that, having just been involved in a collision, one commercial driver will warn others to revise their logbooks because the police are checking documents of truck drivers involved in accidents.

The third criterion of the *Burger* test requires that an inspection program provide a constitutionally adequate substitute for the warrant requirement. *Burger* requires that the statute clearly inform the owner that his business is subject to periodic inspections for a specific purpose. The statute must reasonably restrict the scope and frequency of the inspection program to achieve the statutory objective. The statute also must limit the discretion of inspectors to address the specific purpose of the statutory scheme. In the present case, the police did not conduct the seizure and search of the logbook and bags to carry out the statutory scheme requiring the maintenance of those documents. Thus, we do not address the adequacy of the relied upon statutes' substitute for the warrant requirement.

Because the searches and seizures of the logbook and two bags were not necessary to further a statutory scheme established by the Commonwealth or federal law, we hold that the closely regulated business exception to the warrant requirement does not apply to the facts in this case. The trial court erred by not suppressing that evidence.

### Harmless Error

Once a reviewing court has decided that admitted evidence should have been suppressed, it must determine beyond a reasonable doubt whether the error was harmless. Where the error is harmless, a new trial is not warranted. Harmless error exists if the reviewing court is convinced from the record that (1) the error did not prejudice the defendant or the prejudice was de minimis, (2) the erroneously admitted evidence was merely cumulative of other untainted evidence, or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the guilty verdict. *Commonwealth v. Hawkins*, 549 Pa. 352, 382, 701 A.2d 492, 507 (1997), *cert. denied, Hawkins v. Pennsylvania*, 523 U.S. 1083, 118 S.Ct. 1535, 140 L.Ed.2d 685 (1998).

The Commonwealth had the burden of showing that Appellant violated a state or municipal traffic or motor vehicle law, causing the deaths of the three (3) victims. The record does not suggest that the jury found Appellant guilty of vehicular homicide based solely on the contents of the logbook and two bags. The jury found that the prosecution proved beyond a reasonable doubt that the Appellant was guilty of underlying offenses of speeding and careless driving, and those offenses were the direct and substantial cause of the fire that killed the Harsh family.[11] The entries in the logbook were merely cumulative of direct testimony by expert and eyewitnesses. Officer Jones gave expert testimony that based on the length of skid marks and extent of damage, Appellant was speeding and began braking less than a second before impact. Three drivers testified that Appellant was driving over the speed limit, although traffic had clearly come to a stop. One of the drivers stated that he observed Appellant slouching forward moments before the collision occurred. The medical technician greatly advanced the Commonwealth's theory that Appellant fell asleep at the wheel when she told the jury that Appellant admitted that he had dozed off while driving. *See Commonwealth v. Cathey*, 435 Pa.Super. 162, 166, 645 A.2d 250, 252 (1994) (holding that falling asleep while driving constitutes careless driving pursuant to 75 Pa.C.S. § 3714). Although Appellant rebutted the Commonwealth's evidence, we find that the properly admitted evidence of guilt was so overwhelming that the jury would have found Appellant guilty beyond a reasonable doubt even without having heard the improperly admitted evidence. *See Commonwealth v. Robinson*, 554 Pa. 293, 309, 721 A.2d 344, 352–53 (1998). In light of all the expert and factual evidence of excess speed and careless driving, the admission of the logbook and two bags, even if prejudicial to Appellant, was extremely insignificant in comparison to the properly admitted evidence. *Cf. Pascale v. Simmons*, 406 Pa. 476, 482, 178 A.2d 549, 552 (1962) (finding in civil case that although evidence of skidding does not prove

---

**11.** A conviction for homicide by vehicle requires the prosecution to prove that the defendant's conduct was criminally negligent or reckless. *See Commonwealth v. Heck*, 517 Pa. 192, 201, 535 A.2d 575, 580 (1987).

negligence *per se,* when coupled with additional evidence of excessive speed and inattention, it may establish careless driving). Although we disagree with the Superior Court regarding the propriety of the search of the truck, we agree with its finding that the error in admitting the logbook and two bags into evidence was harmless.

We affirm the order of the Superior Court.

Justice CASTILLE files a concurring opinion.

Justice ZAPPALA files a dissenting opinion in which Justice CAPPY joins.

Justice CASTILLE, concurring.

The majority holds that the trial court erred in admitting the driver's logbook, a bank bag containing toll receipts and a bag containing shipping invoices taken from a wrecked tractor trailer on a state highway at an accident scene because the search was unreasonable and not justified under any exception to the warrant requirement for search and seizure. I disagree that the trial court erred in admitting these items, but I concur in the majority's affirmance of the Superior Court's decision on different grounds.

The majority's conclusion that the search here was unlawful strains logic. Section 4704(a)(3) of the Motor Vehicle Code, 75 Pa.C.S. § 4704(a)(3), clearly authorizes a police officer who has probable cause to believe that a vehicle or driver is unsafe to inspect the vehicle, driver or required documents. The majority would have this authority extend only to the prevention of future harm but not to the investigation of harm which has already occurred. A reading of section 4704(a)(3) which requires that the harm has not yet come to pass is hypertechnical at best. In the case sub judice, the police officers arrived at the scene of a horrific traffic accident with a family of three burned beyond recognition. Based upon their observations of the accident scene (the lack of significant skid marks prior to the point of impact) and the statements of witnesses to the accident, the responding officers clearly had probable cause to believe that the truck and driver involved were unsafe. Thus,

they were permitted, under section 4704(a)(3), to inspect the truck's documents.

Section 6308(b) of the Motor Vehicle Code, 75 Pa.C.S. § 6308(b), also permits a police officer to inspect information necessary to enforce the provisions of the Code where the officer has reasonable grounds to suspect a violation of the Code. It is hard to fathom more reasonable grounds to suspect a violation than the gruesome scene that greeted the officers investigating this accident. Thus, section 6308(b) provides further justification for the search which revealed the logbook and bags.

Both section 4703(a)(3) and section 6308 allow the inspection of logbooks and other documents under circumstances far less extreme than those present in the instant case. Therefore, it is non-sensical that these sections would prevent the inspection of these same documents after an accident has occurred. An accident should not, of itself, invoke a heightened privacy interest simply by virtue of its occurrence even if, by chance, criminal charges may be lodged. Public safety is the overriding interest at stake on public highways in this Commonwealth. Accordingly, commercial vehicle operators traveling the state's highways have a limited expectation of privacy in the required documents that the majority now suppresses. The legislature has determined that the overriding concern for public safety is best served by permitting the inspection of logbooks and other documents required to be kept by commercial haulers without a warrant either before or after an accident, and I believe that the trial court properly admitted the evidence.

Justice ZAPPALA, dissenting.

Harmless error can only be found where the appellate court is convinced beyond a reasonable doubt that "the properly admitted *and uncontradicted* evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the guilty verdict." *Commonwealth v. Hawkins,* 549 Pa. 352, 701 A.2d 492, 507 (1997) (emphasis added).

590

The majority misapplies this analysis. The majority concedes that "the Appellant rebutted the Commonwealth's evidence," slip opinion at 19, but fails to explain how its conclusion that the jury would have found the Appellant guilty even without the improperly admitted evidence is drawn from the "properly admitted and uncontradicted evidence of guilt."

The Commonwealth made extensive use of the logbook and the contents of the bags, along with expert testimony interpreting the information contained therein. In closing, the prosecutor argued at length that the jury should infer from this evidence that the Appellant was fatigued from failing to rest for the required periods between trips. Based on my examination of the record, I cannot agree with the majority's conclusion that the error in admitting the improperly seized bags and logbook was harmless beyond a reasonable doubt. Accordingly, I would reverse the judgment of sentence and remand for a new trial.