J-S33031-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DALONZO MONTEZ ZEPPRINANS | |
| Appellant | No. 2407 EDA 2014 |

Appeal from the Judgment of Sentence July 17, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0011333-2013

BEFORE:  FORD ELLIOTT, P.J.E., DONOHUE, J., and LAZARUS, J.

MEMORANDUM BY LAZARUS, J.:                        **FILED JULY 06, 2015**

Dalonzo Montez Zepprinans appeals from the judgment of sentence entered by the Court of Common Pleas of Philadelphia County after he was convicted of aggravated assault,[1] possession of an instrument of crime,[2] reckless endangerment of another person,[3] and possession of a firearm without a license[4] following a non-jury trial.  Zepprinans challenges the trial court's denial of his suppression motion.  After careful review, we affirm.

_____

[1] 18 Pa.C.S. § 2702(a).

[2] 18 Pa.C.S. § 907.

[3] 18 Pa.C.S. § 2705.

[4] 18 Pa.C.S. § 6105(a)(1).

The record reveals the following facts. On July 11, 2013 at about 2:20 a.m., Philadelphia Police Sergeant Francis Rawls responded to a call regarding a person with a gun at 68th Street and Limekiln Pike. Rick Miller, the complainant, had returned to his home and called 911, claiming that a man named "Lonzo" had shot at him. Miller provided a description of what the shooter was wearing, including blue jeans and a white t-shirt. Upon arriving at the scene, Sergeant Rawls encountered Miller, who indicated that the shots had been fired in front of Zepprinans' house and pointed out where the house was located. An unidentified woman permitted Sergeant Rawls to enter the residence and directed him to an upstairs bedroom, where Zepprinans was discovered, wearing an outfit matching Miller's description. Sergeant Rawls secured the property pending receipt of a search warrant.

Detective Edward Davis interviewed Miller twice. During the first interview, at about 3:30 a.m., Miller stated that someone other than Zepprinans had shot at him. During a second interview, conducted approximately 40 minutes after the first interview concluded, Miller indicated that Zepprinans was the shooter and that he had stated otherwise because he was scared. After the second interview, Detective Davis applied for, and obtained, a warrant to search Zepprinans' home for ballistics evidence and proof of residence.

Detective Davis conducted the search at approximately 8:30 a.m. He recovered a 32-caliber fired cartridge casing from the outside of the landing area near Zepprinans' porch. Inside, he recovered Zepprinans' driver's

license and personal correspondence addressed to Zepprinans at that address. While conducting the search, Davis noticed a monitor split into four views that looked like a security camera monitor. Two of the views showed a live feed of the porch and front outside area of the house, where the shooting was alleged to have occurred and where the casing was recovered. The monitor was attached to a digital video recorder ("DVR") that Davis also recovered. Video footage contained on the DVR depicts Zepprinans firing a handgun.

Zepprinans appeared for trial on July 16, 2014, before the Honorable Barbara A. McDermott. However, Zepprinans requested that a suppression motion be heard even though none had been filed. The court allowed the defense to raise a suppression motion orally, in which Zepprinans argued that the search warrant obtained by Detective Davis was limited to ballistics evidence and proof of residency and did not include the DVR. The trial court permitted the Commonwealth to present its case, while holding the suppression motion under advisement. Following Detective Davis' testimony concerning the discovery of the DVR, the court denied the suppression motion and permitted the detective to testify regarding the video recording as it was shown in court.

The defense presented its case the next day, but no witnesses were called. The trial court found Zepprinans guilty of the aforementioned charges. That same day, on July 17, 2014, the court sentenced Zepprinans to five to ten years' incarceration for the firearms possession charge and

concurrent sentences of two to four years' incarceration for aggravated assault, one to two years' incarceration for possession of an instrument of crime, and one to two years' incarceration for reckless endangerment of another person. Zepprinans filed a timely notice of appeal and concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b).

The sole claim Zepprinans raises on appeal is that the trial court erred in denying his suppression motion. In support of this claim, Zepprinans asserts that the warrant obtained to search his home lacked specificity and that the video recording was outside of the scope of the warrant.

When reviewing a challenge to the denial of a suppression motion, our standard of review is as follows:

> The standard and scope of review for a challenge to the denial of a suppression motion is whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. When reviewing the rulings of a suppression court, this Court considers only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. When the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

**Commonwealth v. Downey**, 39 A.3d 401, 405 (Pa. Super. 2012) (citations omitted).

Under the Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution, individuals have the right to be free from unreasonable searches and seizures. Generally, police

are prohibited from searching a person or his or her property and seizing personal items without a search warrant. ***Commonwealth v. Petroll***, 738 A.2d 993, 998 (Pa. 1999). A valid search warrant "must describe the place to be searched and the items to be seized with specificity, and the warrant must be supported by probable cause . . . where probable cause exists to support the search of the area so designated, a warrant will not fail for lack of particularity." ***Commonwealth v. Waltson***, 724 A.2d 289, 292 (Pa. 1998). A search warrant satisfies the particularity requirement where the place, person, or item to be searched for is "precise enough" for the police officer to identify it "with reasonable effort." **Commonwealth v. Johnson**, 33 A.3d 122, 125 (Pa. Super. 2011).

In this matter, the search warrant obtained by Detective Davis provided authority to search for "[a]ny/all ballistic evidence including a firearm and proof of residency." Brief for Appellant, Ex. 1. Zepprinans asserts that the warrant was not specific enough to justify the seizure of the DVR and video recordings it contained, since such recordings are neither ballistics evidence nor proof of residency. This argument fails, however, because the warrant authorizing a search for ballistic evidence and proof of residence is sufficiently specific to permit a search of Zepprinans' residence. An officer could identify the evidence listed with reasonable effort; as the trial court noted, "it efficiently and straightforwardly describes the evidence properly to be seized in such cases." Trial Court Opinion, 10/13/14, at 5.

Thus, the search of Zepprinans' home was valid, and Zepprinans' argument is really an argument that the plain view doctrine does not apply to the DVR.

Under the plain view doctrine, police have the authority to seize evidence in plain view without a warrant, provided that the following criteria are met:

> 1) police did not violate the Fourth Amendment during the course of their arrival at the location where they viewed the item in question; 2) the item was not obscured and could be seen plainly from that location; 3) the incriminating nature of the item was readily apparent; and 4) police had the lawful right to access the item.

*Commonwealth v. Anderson*, 40 A.3d 1245, 1248 (Pa. Super. 2012). Here, the police obtained a warrant prior to searching Zepprinans' home, and, as described above, the search warrant obtained was sufficiently particular to permit the search of his home. The DVR used to record surveillance footage was in plain view within Zepprinans' home. The police were in the same room as the DVR and thus had unobstructed access to it. Therefore, the only criterion in question is whether the incriminating nature of the DVR was readily apparent.

In order for a police officer to make a plain view seizure, the officer must have probable cause to believe the evidence in question is either contraband or otherwise incriminating evidence. *Commonwealth v. Ellis*, 662 A.2d 1043, 1049 (Pa. 1995). Probable cause involves a fair probability of demonstrating criminal activity and exists where "the facts available to the officer would warrant a man of reasonable caution in the belief[] that

certain items may be contraband or stolen property or **useful as evidence of a crime**." ***Commonwealth v. Wright***, 99 A.3d at 565, 569 (Pa. Super. 2014) (quoting ***Commonwealth v. McEnany***, 667 A.2d 1143, 1148 (Pa. Super. 1995)) (emphasis in original). Thus, an officer's knowledge specific to the crime is highly relevant regarding whether the incriminating nature of an object is apparent. ***See, e.g.***, ***McEnany***, 667 A.2d 1143 (indicating plain view exception permitted seizure of cellular telephone during valid search of van because officers knew van was used to transport defendant and telephone calls were made to murder victim on day of crime).

Based upon interviews with Miller, Detective Davis was aware that the alleged shooting had occurred at approximately 2:20 a.m. on July 11, 2013, in front of Zepprinans' home. A casing from a fired .32 caliber bullet was recovered in front of the house. However, Miller's recounting of the facts contained a discrepancy as to the identity of the shooter. Thus, when Detective Davis observed the DVR making a live recording of the area in front of the house, these specific facts indicated the potentially incriminating nature of the DVR. Detective Davis could readily determine that the DVR was recording from a surveillance system. A fair probability existed that the DVR had been recording at the time of the shooting since access to the area had been restricted since police arrived, which prevented tampering with the system. Thus, probable cause existed to seize the DVR and its contents, as the recordings could potentially verify that a shooting occurred as well as the identity of the shooter.

Moreover, as the trial court noted, "[n]o evidence could be more relevant, and little evidence more vulnerable to spoliation, than a video recording of a crime taken and held by the person who committed the crime." Trial Court Opinion, 10/3/14, at 5.

Based on the foregoing, we find that the trial court did not err in denying Zepprinans' suppression motion, as the police obtained a valid warrant to search Zepprinans' home, discovered the DVR in plain view as it recorded surveillance footage, and reasonably believed that the DVR would contain recordings useful as evidence of the crime in question.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/6/2015