J-A11022-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| SHAURICE DUPRE CLARK | : | |
| | : | |
| Appellant | : | No. 552 WDA 2022 |

Appeal from the Judgment of Sentence Entered January 19, 2022
In the Court of Common Pleas of Erie County Criminal Division at No(s):
CP-25-CR-0000230-2021

BEFORE:   BENDER, P.J.E., STABILE, J., and PELLEGRINI, J.*

MEMORANDUM BY BENDER, P.J.E.:          **FILED: FEBRUARY 13, 2024**

We previously remanded this matter to the trial court for the limited purpose of holding a hearing regarding search warrants that this Court deemed invalid in ***Commonwealth v. Clark***, No. 552 WDA 2022, unpublished memorandum (Pa. Super. filed Sept. 11, 2023). We noted in our decision that it was unclear what evidence, if any, the Commonwealth obtained due to the execution of the warrants. Upon review of the transcript, we conclude that Appellant, Shaurice Dupre Clark, is not entitled to relief and affirm Appellant's judgment of sentence.

A complete factual and procedural history is unnecessary, and we briefly discuss the points relevant to the remand.

> On August 30, 2020, at 7:03 p.m., officers were dispatched to investigate a reported shooting at 17th and Poplar Streets. A few

---

* Retired Senior Judge formerly assigned to the Superior Court.

minutes later, officers received reports of another shooting at 16th and Chestnut, which was approximately five blocks from the Poplar shooting. Patrolman Leroy Learn was the first to arrive, and he observed five shell casings on the ground. Patrolman Justin Seath arrived shortly afterwards, and a witness handed him an item described as "a small wallet keychain," which the witness had found on the ground. N.T. Trial, 11/5/21, at 86. That item included a key to a Mitsubishi vehicle, as well as a WIC card[1] bearing a sixteen-digit identification number. Sergeant Craig Stoker later served a search warrant on the Commonwealth's Department of Health and determined that the card belonged to Savannah Lopez, who had a son, L.C. Further investigation established that Appellant was the father of L.C. DNA testing established that Appellant's "DNA was one of three individuals with DNA on the key and keychain…." Trial Court Opinion, 9/1/22, at 9. Additionally, officers discovered that the Mitsubishi had been struck by bullets at the Poplar scene.

The police located several surveillance cameras and obtained the relevant recordings, one of which shows the shooter pursuing a black BMW. As described in the affidavits of probable cause for the search warrants, the video depicts "a black male with long hair wearing a dark colored sweat shirt with a zipper. Under the sweat shirt[,] the driver/shooter had on a purple t-shirt with a square picture. He was also wearing dark colored pants and purple and black shoes." Affidavit of Probable Cause, 10/15/20, at 2. Patrolman Nicholas Strauch immediately identified Appellant as the man depicted in the videos and, on this basis, the police began investigating Appellant as the primary suspect.

---

[1] The Special Supplemental Nutrition Program for Women, Infants and Children.

*Id.* at *2-3.

At trial, the Commonwealth introduced photographs taken from Facebook accounts depicting Appellant wearing purple shoes, as well as an image of an individual with his back to the camera wearing a sweatshirt with

a photograph. The Commonwealth argued that these articles matched what the shooter wore as depicted in the surveillance video.

On appeal, Appellant raised four claims, the fourth of which challenged search warrants executed upon Appellant's cell phone and Facebook accounts. Specifically, a warrant prepared on October 15, 2020, targeted Appellant's cell phone, and a warrant prepared on October 21, 2020, authorized a search of three Facebook accounts. We agreed that the trial court erred in not suppressing the warrants. For present purposes, we note that we concluded the search warrant targeting Appellant's phone was entirely overbroad, as the purported basis for issuing the warrant was to obtain exculpatory information. According to the affidavit of probable cause, Appellant told officers after his arrest that he had taken photographs at a birthday party around the time of the shooting. The warrant sought to search the phone because "pictures taken with an iPhone contain[] metadata that gives time stamps and locations." *Id.* at *21 (quoting affidavit). We concluded that probable cause to search the phone was wholly lacking, because evidence tending to show that an individual did not commit a crime is not the proper subject of a search warrant.

The second warrant was served on Facebook and targeted three Facebook accounts, two of which belonged to Appellant (identified as "Dupree Clark" and "Guap Prince").[1] The warrant sought, *inter alia*, all photos uploaded

---

[1] The third account belonged to Savannah Lopez, with whom Appellant had a child. The only evidence introduced from these accounts showed Appellant, Lopez, and the child. These items were publicly accessible.

by the account owner and all communications and messages made or received by the account owner. The affidavit of probable cause sought this information on the basis that "it is not uncommon for people involved in criminal activity to use social media prior to and after the commission of a crime." *Id.* at *29. We concluded that this warrant was also overbroad because the Commonwealth "sought the complete contents of these Facebook accounts instead of limiting it temporally." *Id.* at *31. We explained that, "[w]hile we do not express any opinion on whether probable cause existed to do so, the Commonwealth easily could have requested to obtain only direct messages during the relevant timespan. Instead, it chose to obtain virtually everything that Facebook captures. We therefore conclude that the Facebook warrants are overbroad." *Id.*

Notwithstanding the DNA evidence tying Appellant to the discarded keychain, we declined to find that the error was harmless beyond a reasonable doubt because "the Commonwealth's own filings reflect uncertainty that identification was guaranteed based solely on that evidence. The Facebook images constituted powerful corroborating evidence, and we are not presently inclined to *sua sponte* declare at this juncture, without the benefit of advocacy from both parties, that the error was harmless beyond a reasonable doubt." *Id.* Furthermore, we could not "determine what evidence should have been suppressed." *Id.* at *32. The application for the first warrant, which preceded the Facebook warrants, had referenced the existence of photographs it had obtained from Facebook, including a photograph depicting Appellant in purple

shoes. Therefore, the "Commonwealth may have obtained this information from publicly-accessible portions of Facebook." *Id.* If so, those items were knowingly exposed to the public and therefore not subject to the Fourth Amendment. Because the record did not indicate what evidence, if any, introduced at trial was obtained from execution of the defective warrants, we remanded for a hearing.

The trial court held a hearing on October 10, 2023. The Commonwealth called Detective Craig Stoker, who prepared the search warrant and served as the lead investigator, as its sole witness. He testified that, to his knowledge, no evidence recovered from the execution of the phone warrant was introduced at trial. N.T., 10/10/23, at 6.

Regarding the photographs introduced at trial, Detective Stoker testified that Exhibit 39 was uploaded on August 29, 2020, and showed Appellant "standing at 17th and Poplar with some emojis and some sayings and things like that." *Id.* at 17. Exhibit 40 was uploaded on August 28, 2020, and showed Appellant "standing at the convenience store." *Id.* at 19. Exhibit 41 was uploaded on August 31, 2020, and showed Appellant "standing in front of the convenience store wearing the same clothing as the previous two pictures, in the purple shoes. It says, 'besides the BS, life's great.'" *Id.* at 20. Detective Stoker stated that all three exhibits were "found on Dupre Clark's Facebook page[.]" *Id.* at 21. Upon questioning from the trial court, Detective Stoker confirmed that the images were available to all members of the public. *Id.* at 55 ("I got on Facebook and publicly – I'm not friends with either Ms.

Lopez or [Appellant]. So everything that I view from them has to be a public page.").[2]

Commonwealth Exhibits 42, 43, and 44 all came from either the Guap Prince or Dupre Clark Facebook pages. Exhibit 42 was a video uploaded on July 24, 2020, and showed a man wearing a shirt that the Commonwealth argued matched that of the shooter as depicted on the surveillance video. Exhibit 43 was a photograph uploaded on July 25, 2020, and also showed that shirt. Exhibit 44 was uploaded on November 23, 2019. It showed "a man standing facing away from the camera with a black hooded sweatshirt." *Id.* at 22. The Commonwealth then asked Detective Stoker to explain if he possessed any of these photographs prior to searching Appellant's phone and Facebook accounts. The following exchange occurred:

A. After the security video was obtained from – the video was analyzed and [Appellant] was [identified] as Mr. Clark. I then spoke with patrolman – well, now Detective Strauch who is familiar with the Erie Police Department social media and who also monitors the social media for the Erie Police Department. At which time he advised me of two Facebook pages that [Appellant] had currently on – in the public to see.

Q. Let's just be clear. First of all, [Appellant] was identified by Officer Nicholas Strauch of the Erie Police Department from the surveillance video.

A. Correct.

. . . .

---

[2] We had noted in our remand order that other jurisdictions have addressed, in deciding whether an individual had a reasonable expectation of privacy in social media postings, the question of whether a government agent can become "false friends" with the target. *Clark*, No. 552 WDA 2022 at *32.

Q. And was he able to provide you with two associated accounts related to [Appellant]'s Facebook?

A. Correct.

Q. And what were those accounts?

A. Dupre Clark and Guap Prince.

Q. Now, prior to obtaining the warrant, did you review those pages?

A. I did.

Q. And were you able to obtain photographs relevant to your shooting investigation prior to the warrant?

A. I did.

Q. Now, what associated photographs did you already have prior to the execution of the warrant?

A. I had the first one.

Q. And just to be clear for the record, the first one we're talking about … [is] Exhibit 39?

A. Yes.

Q. Okay. And once again, how did you obtain them?

A. It was posted on Dupre Clark's public page.

Q. Were you able to access that just through going onto Facebook without obtaining the Facebook records from the company?

A. Correct.

*Id.* at 27-29.

Detective Stoker additionally stated that he had Commonwealth Exhibits 40 and 41 in his possession prior to executing the warrants. He explained that he obtained those photographs from the public portions of the corresponding Facebook accounts. *Id.* at 30 ("You click on their profile and these are the posts that they had posted publicly for everybody to see.").

Commonwealth Exhibits 42, 43, and 44, were possibly obtained from the execution of the search warrant. *Id.* at 31 ("Q. And you do not recall having those photographs prior to getting the warrant[?] A. No, I do not recall one way or the other.").

We conclude that Appellant is not entitled to a new trial. Commonwealth Exhibits 39, 40, and 41 were photographs that the Commonwealth already had in its possession prior to the execution of the warrants.[3] Therefore, a subset of the evidence introduced at trial was not the product of the search warrant and, thus, was not subject to suppression.

Simultaneously, it appears that at least some of the photographs and videos introduced at trial may have been obtained from execution of the warrants. We will assume that Commonwealth Exhibits 42, 43, and 44 were obtained from the execution of an invalid warrant. We conclude that the erroneous admission of that evidence was harmless beyond a reasonable doubt.

> Once a reviewing court has decided that admitted evidence should have been suppressed, it must determine beyond a reasonable doubt whether the error was harmless. Where the error is harmless, a new trial is not warranted. Harmless error exists if the reviewing court is convinced from the record that (1) the error did not prejudice the defendant or the prejudice was de minimis, (2) the erroneously admitted evidence was merely cumulative of other untainted evidence, or (3) the properly admitted and

---

[3] We did not direct the trial court to prepare an opinion following the remand. We do not conclude that an explicit credibility finding is necessary on this point, as the affidavit referenced the existence of the photographs, and the photographs objectively existed. Moreover, Appellant did not assert on cross-examination that the material was inaccessible to the public.

> uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the guilty verdict.

*Commonwealth v. Petroll*, 738 A.2d 993, 1005 (Pa. 1999) (citation omitted). Because some of the photographs depicting Appellant wearing purple sneakers were lawfully obtained, any additional photographs obtained from the execution of the warrant were merely cumulative of the untainted photographs, as the erroneously admitted additional photographs were of similar character. To the extent that the Commonwealth did not possess any photographs showing Appellant's sweatshirt, we conclude that the error did not prejudice Appellant. Our previous memorandum decision incorporated still photographs taken from the surveillance video, and the purple sneakers are distinctive in a way that the sweatshirt is not. We are persuaded that the introduction of the sweatshirt photographs was harmless beyond a reasonable doubt.

Next, we note that the remand hearing established that the execution of the search warrants led to evidence tying the phone to Appellant via execution of the search warrant, as the email addresses associated with the Prince Guap and Dupre Clark Facebook accounts were email addresses that were stored on Appellant's phone. On cross-examination, Appellant established that it was possible the photographs Detective Stoker had referenced in the affidavit of probable cause warrant for Appellant's phone may have come from either the Guap Prince Facebook account or the Dupre Clark Facebook account. As well, the execution of the Facebook warrants

produced business records which left little doubt that Appellant operated the accounts.[4]  Moreover, those records definitively established the dates on which the photographs and videos were uploaded to the accounts.

The records obtained from Facebook should have been excluded, which includes the records concerning authentication.  However, we again conclude that this error was harmless beyond a reasonable doubt.  In our prior memorandum decision, we rejected Appellant's claim that the Commonwealth failed to prove that Appellant authored the Facebook posts in question.  We concluded that Appellant waived the claim; alternatively, we concluded that the Commonwealth presented sufficient evidence to authenticate the evidence.

> Here, Appellant essentially concedes that the Commonwealth established that he owned and controlled the accounts.  **See** Appellant's Brief at 52 (conceding that the Commonwealth's testimony "may [have] establish[ed] Appellant's ownership of or control or access to these accounts").  Turning to authorship of the posts, the Commonwealth obtained, through its warrant and Facebook's authentication process, documents from Facebook establishing timestamps for each exhibit.  For example, the post showing Appellant standing in front of the intersection of Poplar and West 17th Street was uploaded by the "Dupree Clark" account on August 29, 2020, one day before the shooting at that location.  Appellant's middle name is Dupree, and that fact, in conjunction with the timing of the post, circumstantially supports that Appellant authored it.  The accompanying text essentially bragged that Appellant did not fear whoever was "looking for" him, and the prominence of the street signs in the picture suggest that Appellant is telling whoever reads the post where he may be found.  The very next day a vehicle belonging to Savannah Lopez,

---

[4] If the accounts did not belong to Appellant, it would raise questions of whether Appellant had standing to challenge the warrant.

the mother of his child, was struck by gunfire at that location. As another example, the post showing the man in the sweatshirt with the picture on its back was posted on November 23, 2019, which included a comment from a friend wishing Appellant a happy birthday. Appellant's date of birth is November 22. That other members of the public treated the account as belonging to Appellant also supports a conclusion that Appellant controlled and authored the posts introduced at trial. Therefore, even if not waived, we would conclude that the Commonwealth presented sufficient evidence to authenticate the material.

*Clark*, No. 552 WDA 2022 at *14-15.

We acknowledge that the records showing the Facebook accounts were registered by email addresses that also appeared on Appellant's phone was strong evidence and of a different character than the circumstantial evidence discussed *supra*. However, we find that the introduction of this evidence was harmless beyond a reasonable doubt. The key question in this case was simply whether the man depicted in the surveillance videos was Appellant. Whether (and when) Appellant personally posted the photographs is of little moment; the critical question is simply whether the picture depicted Appellant. The jury had the advantage of seeing Appellant firsthand during trial and could compare his appearance to the photographs, as well as those photographs to the surveillance video. Because the Commonwealth lawfully obtained the photographs showing a man wearing purple shoes, the jury was free to determine as a matter of fact whether the photographs depicted Appellant. If the jury concluded that the photographs were not Appellant, then the material did not prejudice him in any way. We therefore conclude

that any prejudice from introducing the Facebook authentication material was *de minimis.*

Judgment of sentence affirmed.

Judge Pellegrini did not participate.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

FILED: 2/13/2024