J-A03009-17

2017 PA Super 351

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| Appellant | : : : : | |
| v. | : : : | |
| JEFFERY CHARLES MAGUIRE | : : | No. 654 MDA 2016 |

Appeal from the Order Entered March 22, 2016
In the Court of Common Pleas of Clinton County
Criminal Division at No(s):  CP-18-CR-0000396-2015

BEFORE:  LAZARUS, J., STABILE, J. and DUBOW, J.

OPINION BY DUBOW, J.:                    **FILED NOVEMBER 08, 2017**

The Commonwealth appeals from the March 22, 2016 Order, entered in the Clinton County Court of Common Pleas, granting the Motion to Suppress Evidence filed by Appellee, Jeffrey Maguire ("Maguire") in which  Maguire sought to suppress evidence inspectors obtained without a warrant from an inspection of his commercial vehicle conducted during a systematic vehicle inspection program.[1]  Because we find that the **Tarbert**/**Blouse**[2] guidelines

_____

[1] **See** Pa.R.A.P. 311(d) (Commonwealth may appeal as of right from Order that does not end entire case where Commonwealth certifies in notice of appeal that Order will terminate or substantially handicap prosecution).  Here, the Commonwealth included in its Notice of Appeal a certification that the March 22, 2016 Order, granting Maguire's Motion to Suppress, "will terminate or substantially handicap the prosecution in the above-captioned matter." Commonwealth's Notice of Appeal, 4/20/16.

[2] **Commonwealth v. Tarbert**, 535 A.2d 1035 (Pa. 1987) (plurality); **Commonwealth v. Blouse**, 611 A.2d 1177 (Pa. 1992).

do not apply to the inspection of the commercial vehicle in this case and the warrantless inspection meets the requirements of **New York v. Burger,** 482 U.S. 691 (1987), and its progeny, we reverse.

In April 2015, the Pennsylvania State Police ("PSP") and the Department of Environmental Protection ("DEP") organized a joint program, pursuant to 75 Pa.C.S. § 4704(a)(2) ("Section 4704(a)(2)"), to inspect commercial vehicles at the Clinton County Landfill in Wayne Township.[3]

On May 20, 2015, PSP Trooper Corey Beaver, a Motor Carrier Enforcement Officer, and a Motor Carrier Enforcement Supervisor, went to the landfill to conduct inspections of commercial vehicles at the landfill. **See** Trial Court's Findings of Fact, 3/22/16, at ¶¶ 1-9.

The inspection officers established a procedure whereby each officer, as he or she became available, would stop the next truck entering the landfill. **Id.** at 10.

Trooper Beaver was in a marked patrol car when Maguire arrived in a commercial vehicle, a tri-axle dump truck. Trooper Beaver exited his vehicle and motioned for Maguire to pull into the lot where the officers were conducting the inspections. Trooper Beaver asked Maguire for his documents. While speaking with Maguire, Trooper Beaver smelled the odor of an alcoholic beverage emanating from his breath.

---

[3] Section 4704 authorizes regulatory inspections of commercial vehicles, drivers, documents, equipment, and loads to ensure that their condition complies with Department of Transportation regulations ("DOT"). **See** 75 Pa.C.S. § 4704(a)(2).

Maguire provided Trooper Beaver with the necessary documents, and Trooper Beaver conducted a "Level Two" inspection, which, in addition to a review of the documents, included an inspection of lights, horn, wipers, tires, wheel condition, and safety equipment. *Id.* at ¶¶ 15-20.

After the inspection, Trooper Beaver asked Maguire to exit the vehicle, which Maguire did. Trooper Beaver asked Maguire if Maguire had been drinking and advised Maguire that Trooper Beaver detected the odor of alcohol.

Maguire responded that he "drank a beer" on his way over to the Landfill. Trooper Beaver observed a cooler on the floor of the truck, in front of the gearshift, and asked Maguire about the contents. Maguire responded that it contained water and beer. The cooler contained three 12-ounce cans of Busch Light beer and a few water bottles. *Id.* at ¶¶ 21-27.

Trooper Beaver then conducted field sobriety testing on Maguire. Maguire failed two of the three tests. Trooper Beaver then transported Maguire to the hospital for blood testing. *Id.* at ¶¶ 29-31; N.T. Suppression Hearing, 5/13/16, at 12.

Following this incident, the Commonwealth charged Maguire, a commercial truck driver, with five counts of Driving Under the Influence and five counts of Unlawful Activities.[4]

---

[4] Specifically, the Commonwealth charged Maguire with one count each of violating 75 Pa.C.S. §§ 3802(f)(3), 3802(f)(4), 3802(d)(1), 3802(d)(3), and 3802(d)(1)(iii), and five counts of violating 75 Pa.C.S. § 4107(b)(2).

Maguire filed a pretrial Suppression Motion, arguing that the *Tarbert*/*Blouse* guidelines applied to a commercial vehicle inspection and since the inspection in this case failed to meet those guidelines, the inspection of Maguire's truck was unconstitutional.[5]

On March 14, 2016, the trial court conducted a hearing on Maguire's Motion to Suppress, following which it granted the motion. The trial court, relying on this Court's holding in *Commonwealth v. Garibay*, 106 A.3d 136 (Pa. Super. 2014), expanded the scope of the *Tarbert*/*Blouse* guidelines to include an inspection of a commercial vehicle. *See* Trial Ct. Op., 3/22/16, at 6 (unpaginated). The trial court concluded that since the inspection at issue did not meet the standards set forth in *Tarbert*/*Blouse*, the inspection was unconstitutional and suppressed the evidence of Maguire's alcohol consumption.

The Commonwealth timely appealed and presents the following issues for our review:

1.  Do the *Tarbert*/*Blouse* guidelines apply to commercial vehicle inspections conducted pursuant to 75 Pa.C.S.[] § 4704, particularly where commercial vehicle inspections are part of a highly regulated industry exception to the warrant requirement?

---

[5] *Tarbert*, *supra*, *Blouse*, *supra*, and their progeny have articulated five criteria that the Commonwealth must satisfy in order for a **vehicle checkpoint** to meet constitutional muster with respect to the protection of privacy rights.

2.      Did the trial court err because after State Police stopped Maguire's commercial vehicle to conduct a lawful commercial vehicle inspection, the State Police had probable cause to believe Maguire was operating his commercial vehicle under the influence of alcohol because an odor or alcohol emanated from Maguire?

Commonwealth's Brief at 4.

When we review the grant of a Motion to Suppress, we consider "only the evidence from the defendant's witnesses along with the Commonwealth's evidence that remains uncontroverted." *Commonwealth v. Guzman*, 44 A.3d 688, 691-92 (Pa. Super. 2013). Our standard of review is restricted to whether the record supports the suppression court's factual findings. With respect to legal conclusions, however, we conduct *de novo* review. *Id.*

Since the only evidence in this case was that of Trooper Beaver and his testimony was not contradicted, there are no relevant facts in dispute. Therefore, the issues on appeal are purely legal issues and our standard of review is *de novo*. *See Commonwealth v. Beaman*, 880 A.2d 578, 581 (Pa. 2005); *Guzman*, *supra*.

It is well-settled that the *Tarbert*/*Blouse* guidelines apply to checkpoints established to inspect **non-commercial** vehicles pursuant to 75 Pa.C.S. § 6308(b).[6] *See Garibay*, *supra*; *In re J.A.K.*, 908 A.2d 322 (Pa.

_____

[6] Section 6308(b) authorizes "systematic vehicle inspection programs," and gives authority to police officers who are "engaged in a systematic program of checking vehicles or drivers" to "stop a vehicle . . . for the purpose of checking the vehicle's registration . . . or [for a] driver's license . . ." without the requirement of articulable and reasonable grounds to suspect a violation of the Motor Vehicle Code. *See* 75 Pa.C.S. § 6308(b).

Super. 2006). We now consider whether the **Tarbert**/**Blouse** guidelines also apply to an inspection of a **commercial** vehicle that is conducted pursuant to a systematic vehicle inspection program.

The Commonwealth argues that the trial court erred in expanding the **Tarbert**/**Blouse** guidelines to inspections of commercial vehicles because commercial vehicle inspections fall within the closely regulated industry exception to the Fourth Amendment warrant requirement as enumerated in **Burger**. Commonwealth's Brief at 12, 19. We agree.

The United States Supreme Court in **Burger** recognized an exception to the Fourth Amendment warrant requirement for administrative inspections in "closely regulated" businesses. The Court held that an owner or operator of a commercial business or vehicle in a closely regulated industry has a substantially reduced expectation of privacy. Thus, the Fourth Amendment warrant and probable cause requirements applicable in the context of a pervasively regulated[7] business are lower. **See Burger**, 482 U.S. at 699-702.

The **Burger** Court also concluded that, in the context of a closely regulated business, warrantless inspections are constitutional if: (1) there is a "substantial governmental interest inform[ing] the regulatory scheme pursuant to which the inspection is made"; (2) the inspection is necessary to advance the regulatory scheme; and (3) the statute's inspection program is applied with such certainty and regularity as to provide a "constitutionally

_____

[7] The **Burger** Court used the terms "closely regulated" and "pervasively regulated" interchangeably when analyzing this issue.

adequate substitute for a warrant." ***Burger***, 482 U.S. at 702-703. The Court ultimately held that a valid administrative inspection without a warrant that uncovers evidence of a crime does not violate the Fourth Amendment. ***Id.*** at 716.

The Pennsylvania Supreme Court, in ***Commonwealth v. Petroll***, 738 A.2d 993 (Pa. 1999) addressed the constitutionality of a warrantless search of a tractor-trailer after the driver of a tractor-trailer crashed into other vehicles, killing several individuals. The police conducted the search immediately after the accident and the search was not part of a systematic vehicle inspection program.

The Pennsylvania Supreme Court adopted the three-part test that the U.S. Supreme Court enunciated in ***Burger*** for a closely regulated business:

1. There must be a "substantial" government interest that informs the regulatory scheme pursuant to which the inspection is made;

2. The warrantless inspection must be "necessary to further the regulatory scheme"; and

3. The statute's inspection program, in terms of the certainty and regularity of its application, must provide a constitutionally adequate substitute for a warrant. In other words, the regulatory statute must perform the two basic functions of a warrant: it must advise the owner of the commercial premises that the search is being made pursuant to the law and has a properly defined scope, and it must limit the discretion of the inspecting officers.

***Petroll***, 738 A.2d at 1000-1001, quoting ***Burger***, 482 U.S. at 702-03.

The Pennsylvania Supreme Court applied the **Burger** guidelines to facts of **Petroll**. As an initial matter, the Pennsylvania Supreme Court held that "trucking is a closely regulated industry." **Petroll**, 738 A.2d at 1001.

The Supreme Court then discussed the first element and concluded that, "there can be no dispute that the Commonwealth has a substantial interest in regulating the trucking industry for public safety." **Id.** at 1002.

Although the Supreme Court concluded that the Commonwealth failed to meet the second prong of the **Burger** test, the Court's analysis is helpful in analyzing the facts of this case. The Supreme Court found that the warrantless search of the truck in **Petroll** did not advance the regulatory scheme of removing unsafe vehicles from the highways in the Commonwealth because the police conducted the warrantless search immediately after the accident occurred and, thus, the search could not have prevented the accident. **Id.** at 1003. In other words, a warrantless search that the police conduct after an accident as part of its investigation into an accident does not further the regulatory scheme to regulate trucks and prevent accidents.

The Supreme Court also noted that the police seized a logbook, travel receipt and other documents and likewise the seizure of those items does not prevent accidents on the highways of the Commonwealth. **Id.**

With respect to the third prong of the **Burger** analysis—that the inspection program provide a constitutionally adequate substitute for the warrant requirement—the **Petroll** Court clarified that "**Burger** requires that the statute clearly inform the owner that his business is subject to periodic

inspections for a specific purpose." *Id.* at 1004. Specifically, the **Petroll** Court noted that the regulatory statute must "reasonably restrict the scope and frequency of the inspection program to achieve the statutory objective" and "limit the discretion of inspections to address the specific purpose of the statutory scheme." *Id.*

In the instant matter, we first hold that the trucking industry is a closely regulated industry and businesses and individuals engaged in the trucking industry have a lower expectation of privacy than individual driving non-commercial vehicles. *See Burger*, 482 U.S. 702; *Petroll*, 738 A.2d 1000. Thus, since these businesses and individuals have a lower expectation of privacy, the *Tarbert*/*Blouse* guidelines do not apply to inspections of commercial vehicles in the trucking industry.[8]

Our analysis now turns to whether the warrantless inspection of Maguire's commercial vehicle that was part of a systematic vehicle inspection program comported with the principles the Pennsylvania Supreme Court articulated in **Petroll**, *supra*.

Section 4704(a)(2) authorizes an officer of the PSP or other qualified Commonwealth employee, "engaged in a systematic vehicle inspection program, to conduct an administrative inspection of a vehicle, person, documents, equipment, and load to determine whether they meet the standards established by department regulations." 75 Pa.C.S. § 4704(a)(2).

_____

[8] **Petroll**, 738 A.2d at 1001.

Applying the rationale set forth in *Petroll*, we conclude that the statute pursuant to which inspectors stopped Maguire's vehicle, Section 4704(a)(2), easily satisfies the first prong of the *Burger* test. The Supreme Court in *Petroll* analyzed Section 4704(a)(2) and concluded that it is part of a statutory scheme that regulates the trucking industry and "advances a substantial government interest" of ensuring road safety. This statutory scheme also furthers the regulatory scheme by ensuring that individuals and businesses in the trucking industry meet the standards set by the Department of Transportation.

We also conclude that the systematic vehicle inspection program set forth in Section 4704(a)(2) meets the second prong of the *Burger* test by advancing the regulatory scheme. In particular, the systematic vehicle inspection program advances the government interest by removing unsafe vehicles from the roadways before accidents occur. *Petroll* 738 A.2d at 1003.

We conclude further that Section 4704(a)(2) satisfies the third prong, as the statute is sufficiently specific to provide a constitutionally adequate substitute to the warrant requirement, *i.e.*, it advises the operator of a commercial vehicle that the regulatory search is being made pursuant to the law, it has a properly defined scope, and it limits the discretion of inspecting officers.

In particular, the statute limits the discretion of the inspecting officers by specifying the objects subject to the systematic inspection program—any vehicle, driver, documents, equipment, and load. It also identifies the purpose

of the inspection—to ensure that vehicles meet established regulatory standards.

Thus, we conclude that this statute, on its face, is "sufficiently comprehensive and defined" so that a commercial truck driver is informed that his truck may be subject to periodic administrative inspections undertaken to ensure that the truck complies with DOT regulations and is road-safe. *Burger*, 482 U.S. at 703; *see Petroll*, 738 A.2d at 1004.

Trooper Beaver's uncontradicted testimony at the suppression hearing supports this conclusion as it provided an understanding of the limits on the system of inspection and the lack of discretion the inspectors had in selecting which trucks to inspect. Trooper Beaver testified that the PSP and the DEP scheduled the instant inspection at least a month prior to the inspection at the Clinton County Landfill. He further testified that, as permitted in the statute, it was only the PSP and DEP administrative inspectors who conducted the inspections. He also testified to the limited scope of his inspection. Specifically, he testified that he conducted a "level two inspection," which entailed a walk-around inspection of the truck's "[l]ights, horn, wipers, the tires, the condition of the tires, the tires' inflation, whether there [are] any flat tires, the wheel condition, the safety inspection[,]" as well as Maguire's documents. N.T., 3/14/16, at 10.

Trooper Beaver also described the process by which the Team selected the trucks to inspect. Simply, if an inspector was available when the truck arrived at the landfill, one of the inspectors inspected it. If the inspectors

were unavailable because they were inspecting other trucks, the truck was not inspected. We find that this system for selecting trucks to inspect sufficiently limits the discretion of the inspectors and meets the third element of *Burger*.

For the foregoing reasons, we conclude that the administrative inspection at issue here satisfied the *Burger* test. Consequently, the trial court erred in suppressing the evidence obtained as a result of the warrantless administrative inspection. *Burger*, 482 U.S. at 716 (holding that a valid administrative search without a warrant that uncovers evidence of a crime does not violate the Fourth Amendment.).

In its second issue on appeal, the Commonwealth asserts that, following the lawful warrantless inspection, the odor of alcohol on Maguire gave Trooper Beaver probable cause to believe Maguire was operating his commercial vehicle under the influence of alcohol. Commonwealth's Brief at 23. Therefore, the Commonwealth argues, the search and seizure of evidence from Maguire's truck, the responses to brief questions posed to Maguire, and the results of Maguire's field sobriety test are admissible. *Id.* at 24. We agree.

"Probable cause exists where [a police] officer has knowledge of sufficient facts and circumstances to warrant a prudent person to believe that [a] driver has been driving under the influence of alcohol or a controlled substance." *Commonwealth v. Hilliar*, 943 A.2d 984, 994 (Pa. Super. 2008 (citation omitted). "[A] police officer may utilize both his experience and

personal observations to render an opinion as to whether a person is intoxicated." ***Commonwealth v. Williams***, 941 A.2d 14, 27 (Pa. Super. 2008) (*en banc*).  Probable cause justifying a warrantless arrest for DUI is determined by the "totality of the circumstances." ***Commonwealth v. Williams***, 941 A.2d 14, 27 (Pa. Super. 2008) (citations omitted).

Trooper Beaver testified that, in initiating the inspection of Maguire's truck, he asked Maguire for his documents.  While speaking with Maguire, Trooper Beaver smelled the odor of an alcoholic beverage emanating from his breath.  After the inspection of the vehicle, Trooper Beaver asked Maguire to exit the vehicle, asked him if he had been drinking, and advised him that he had detected the odor of alcohol.  Maguire responded that he "drank a beer" on his way over to the Landfill.  Trooper Beaver observed a cooler on the floor of the truck, in front of the gearshift, and asked Maguire about its contents. Maguire responded that it contained water and beer.  The cooler contained three 12-ounce cans of Busch Light beer and a few water bottles.  Trooper Beaver then administered three field sobriety tests; Maguire failed two of them.

In light of the undisputed testimony, we conclude that the odor of alcohol on Maguire, coupled with his subsequent admission that he had been drinking beer and Maguire's inability to pass all three sobriety tests, provided Trooper Beaver with probable cause to believe that Maguire was operating his commercial vehicle under the influence of alcohol.

Order reversed.

Judge Stabile joins the Opinion.

Judge Lazarus files a Dissenting Opinion.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/8/2017