J-S11010-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| RICHARD ALEXANDER FILL | : | |
| | : | |
| Appellant | : | No. 1064 WDA 2021 |

Appeal from the PCRA Order Entered August 9, 2021
In the Court of Common Pleas of Erie County
Criminal Division at No(s): CP-25-CR-0000082-2016

BEFORE: PANELLA, P.J., OLSON, J., and SULLIVAN, J.

MEMORANDUM BY PANELLA, P.J.: **FILED: MAY 31, 2022**

By raising multiple claims of ineffective assistance of trial counsel under the Post Conviction Relief Act ("PCRA") 42 Pa.C.S.A. §§ 9541-9546, Richard Alexander Fill seeks to revisit his convictions of various crimes related to an encounter he had with law enforcement at his residence. We affirm.

On November 3, 2015, Fill was involved in a police incident at his home, during which he was informed that Crisis Services at Safe Harbor had obtained a warrant for a mental health evaluation pursuant to 50 P.S. § 7302. At one point, Fill fired a gun at police through a window. Eventually, Fill was arrested, and the police secured a search warrant and conducted a search of the residence. In addition to multiple mason jars containing marijuana and a water bong, the police discovered a chainsaw on a patio table and a pellet gun near the window from which Fill fired a shot at police.

On November 7, 2016, at the conclusion of a nonjury trial, the court convicted Fill of assault of a law enforcement officer, criminal mischief, simple assault, recklessly endangering another person, possession of a controlled substance, and possession of drug paraphernalia. On January 23, 2017, the trial court sentenced Fill to serve an aggregate term of five and one-half to twelve years of incarceration, followed by one year of probation.

Eventually, Fill sought and was granted relief under the PCRA. Specifically, the PCRA court reinstated his right to file post-sentence motions *nunc pro tunc*. The trial court subsequently denied Fill's post-sentence motions, and on August 25, 2020, this Court affirmed his judgment of sentence. **Commonwealth v. Fill**, 60 WDA 2019 (Pa. Super. 2020) (unpublished memorandum).

On October 5, 2020, Fill filed the instant PCRA petition. On May 28, 2021, current counsel filed an amended PCRA petition. The PCRA court filed a notice of intent to dismiss on June 30, 2021, and Fill's attorney filed an objection. On August 9, 2021, the PCRA court filed an order dismissing the PCRA petition. This timely appeal followed, in which Fill raises multiple claims of ineffective assistance of counsel.

Our standard of review for an order denying PCRA relief is whether the record supports the PCRA court's determination, and whether the PCRA court's determination is free of legal error. **See Commonwealth v. Phillips**, 31 A.3d

317, 319 (Pa. Super. 2011). The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record. *See id*.

Concerning ineffective assistance of counsel arguments, we presume counsel is effective, and the appellant bears the burden to prove otherwise. *See Commonwealth v. Bennett*, 57 A.3d 1185, 1195 (Pa. 2012). The appellant must demonstrate: (1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the proceedings would have been different. *See Commonwealth v. Solano*, 129 A.3d 1156, 1162-1163 (Pa. 2015). Failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim. *See Commonwealth v. Jones*, 815 A.2d 598, 611 (Pa. 2002).

We observe that claims of ineffective assistance of counsel are not self-proving. *See Commonwealth v. Wharton*, 811 A.2d 978, 986 (Pa. 2002). "[A] post-conviction petitioner must, at a minimum, present argumentation relative to each layer of ineffective assistance, on all three prongs of the ineffectiveness standard…." *Commonwealth v. D'Amato*, 856 A.2d 806, 812 (Pa. 2004). "A failure to satisfy any prong of the ineffectiveness test requires rejection of the claim of ineffectiveness." *Commonwealth v. Daniels*, 963 A.2d 409, 419 (Pa. 2009) (citation omitted).

Pursuant to the first prong, we note that where an appellant is not entitled to relief on the underlying claim upon which his ineffectiveness claim is premised, he is not entitled to relief with regard to his ineffectiveness claim. *See Commonwealth v. Ousley*, 21 A.3d 1238, 1246 (Pa. Super. 2011). In short, counsel cannot be deemed ineffective for failing to pursue a meritless claim. *See Commonwealth v. Loner*, 836 A.2d 125, 132 (Pa. Super. 2003) (*en banc*).

Fill first argues that trial counsel was ineffective for failing to file a suppression motion challenging the lack of a warrant for emergency mental health treatment ("302 warrant")[1] issued against Fill, or in the alternative, failing to challenge the evidentiary basis for filing a 302 warrant if one existed. Fill contends that without a 302 warrant the entry into the home and any evidence garnered were inadmissible as fruits of the poisonous tree.

"The Fourth Amendment to the [United States] Constitution and Article I, Section 8 of [the Pennsylvania] Constitution protect citizens from unreasonable searches and seizures." *Commonwealth v. McAdoo*, 46 A.3d 781, 784 (Pa. Super. 2012). "A search conducted without a warrant is deemed to be unreasonable and therefore constitutionally impermissible, unless an

---

[1] *See* 50 Pa.C.S.A. § 7302(a)(1) (under the Mental Health Procedures Act, upon written application by a physician or other responsible person, a warrant may issue for emergency examination of an individual where facts set forth "reasonable grounds to believe a person is severely mentally disabled and in need of immediate treatment").

- 4 -

established exception applies." ***Commonwealth v. Strickler***, 757 A.2d 884, 888 (Pa. 2000).

Some exceptions to the warrant requirement apply where "the police have probable cause to believe a crime has been or is being committed." ***Commonwealth v. Petroll***, 738 A.2d 993, 998-999 (Pa. 1999). "Even absent probable cause, some searches without warrants do not violate state or federal constitutional privacy rights." ***Id***. This category includes searches and seizures conducted while the police are acting as community caretakers. ***See Commonwealth v. Livingstone***, 174 A.3d 609, 625-626 (Pa. 2017). "The community caretaking doctrine has been characterized as encompassing three specific exceptions: the emergency aid exception; the automobile impoundment/inventory exception; and the public servant exception, also sometimes referred to as the public safety exception." ***Id***. at 626-627. Each of the exceptions contemplates that the police officer's actions be motivated by a desire to render aid or assistance, rather than the investigation of criminal activity. ***Id***. at 627.

> [I]n order for a seizure to be justified under the public servant exception to the warrant requirement under the community caretaking doctrine, [1] the officer must point to specific, objective, and articulable facts which would reasonably suggest to an experienced officer that assistance was needed; [2] the police action must be independent from the detection, investigation, and acquisition of criminal evidence; and, [3] based on a consideration of the surrounding circumstances, the action taken by police must be tailored to rendering assistance or mitigating the peril. Once assistance has been provided or the peril mitigated, further police

action will be evaluated under traditional Fourth Amendment jurisprudence.

*Id*. at 637.

As the PCRA court aptly notes, the police intervention at the scene was prompted by a request from Crisis Services. *See* PCRA Court Opinion, 6/30/21, at 9. At Fill's trial, Pennsylvania State Police Corporal Matthew Wargo testified to receiving Crisis Services' request for assistance at Fill's residence and his subsequent observation of Fill's behavior at the residence upon his arrival. *See* N.T., 11/7/16, at 7-17. As the PCRA court explained, "[Fill] ignored the officers' attempts to help and instead blared music, opened and shut windows, and screamed and howled." PCRA Court Opinion, 6/30/21, at 9 (citing N.T., 11/7/16, at 13-15).

Second, the record reflects that the police presence at the scene was independent from the detection, investigation, and acquisition of criminal evidence. Rather, as Corporal Wargo explained, the State Police received a specific request for assistance from Crisis Services that precipitated law enforcement involvement. N.T., 11/7/16, at 7-8.

Further, Corporal Wargo testified that for the first 1 ½ hours he was on the scene, he attempted to communicate with Fill from outside of the residence and to convince Fill to take advantage of the help being offered by Crisis Services. *See id*. at 13. Corporal Wargo offered the following testimony "I was advising him we were solely there to assist Crisis Services. I had told

him that we had Crisis Services on scene to talk with him and help him out with any issues he was having at the time. Numerous attempts were made over an hour and a half." *Id*. This testimony supports the determination that the actions taken by the police were tailored to render assistance or mitigate the peril.

These circumstances reasonably suggest to an experienced officer that assistance was needed. Accordingly, based on the foregoing, we conclude that the record establishes the State Police were acting in their role as public servants and pursuant to their role as community caretaker. Consequently, we discern no merit to the underlying issue that trial counsel was ineffective for failing to seek suppression of evidence due to a lack of a 302 warrant. Fill's claim of ineffectiveness fails.

Fill next argues that trial counsel was ineffective for failing to seek suppression of evidence acquired during the search of Fill's residence. Fill contends that there was not probable cause to issue the search warrant for the home. Specifically, he states that "the issue is whether there was probable cause to support a search of the house based upon the warrant application." Appellant's Brief at 19. Fill asserts that all evidence secured pursuant to the search warrant should have been suppressed and trial counsel erred in failing to challenge its admission. We disagree.

Under both state and federal constitutions, search warrants must be supported by probable cause. *See Commonwealth v. Hoppert*, 39 A.3d 358, 361-362 (Pa. Super. 2012). Pennsylvania Rule of Criminal Procedure 203 addresses the requirements for the issuance of a search warrant and provides, in pertinent part, as follows:

**Rule 203.  Requirements for Issuance**

(B)  No search warrant shall issue but upon probable cause supported by one or more affidavits sworn to before the issuing authority in person or using advanced communication technology. The issuing authority, in determining whether probable cause has been established, may not consider any evidence outside the affidavits.

Pa.R.Crim.P. 203(B).

We acknowledge that "in determining whether probable cause for issuance of a warrant is present, the 'totality of the circumstances' test" is utilized. *Commonwealth v. Murphy*, 916 A.2d 679, 681-682 (Pa. Super. 2007). "Under such a standard, the task of the issuing authority is to make a practical, common sense assessment whether, given all the circumstances set forth in the affidavit, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id*. at 682 (citation omitted). Probable cause is based on a finding of probability of criminality, not a *prima facie* showing. *Commonwealth v. Arthur*, 62 A.3d 424, 432 (Pa. Super. 2013).

Because reasonable minds often disagree on whether an affidavit establishes probable cause, "the preference for warrants is most appropriately effectuated by according great deference to a magistrate's determination." *Commonwealth v. Jones*, 988 A.2d 649, 656 (Pa. 2010). "Further, a reviewing court is not to conduct a *de novo* review of the issuing authority's probable cause determination…." *Id*. at 655 (brackets omitted).

Our review of the record reflects that the affidavit of probable cause presented to the issuing authority contained the following information provided by Trooper Scott Sipko:

> On 11/03/15 @ approx. 1430 hrs, PSP-Corry received a request from Erie County Crisis Services to assist one of their workers on a house visit for the defendant. ECCS received information from the defendant[']s girlfriend that he was acting paranoid and may be in need of services. Upon arrival to [****] Welch Rd., Amity Twp., Erie County, Corporal Matthew WARGO observed an electrical line pole located on the defendant's property which had been cut down. The cut on the pole was smooth and appeared to be made by a chainsaw. Later a chainsaw was located behind a shed, also located on the property, atop a table. Cpl. WARGO attempted to make contact with the defendant and get him to come out of the house to talk. The defendant refused and was screaming and yelling.
>
> A perimeter of Troopers was established around the house. Tpr. Josh DEITLE was located on the north side of the residence. At approx. 1945 hrs the defendant fired a weapon from the first floor window on the north side of the residence. Trp. DEITLE was located on the north side of the residence approx. 30 yards away when the shot was fired in his direction.
>
> Based on these facts, I respectfully request a search warrant for all weapons that may be located in the defendant's residence.

Search Warrant and Affidavit of Probable Cause, 1/3/15, at 2. The search warrant specified that "[a]ll firearms in possession of Richard Alexander FILL and any other fruits of a crime" were to be searched for and seized. *Id*. at 1.

Upon consideration of the totality of circumstances in this matter and the relevant legal authority, it is our conclusion that the affidavit reveals a fair probability that weapons would be found at the location in question. To reiterate, Trooper Sipko's affidavit reflects the following circumstances. The State Police responded to a request for assistance at Fill's residence due to concerning behavior. Upon arrival, law enforcement discovered a utility pole on Fill's property had been cut down. When Corporal Wargo was unsuccessful in appealing to Fill to exit the home, the police established a perimeter around the house. Subsequently, Fill opened a widow and fired a shot from inside of the house. These circumstances indicate a fair probability that weapons would be found in the residence, thereby establishing probable cause for the issuance of a search warrant.

Accordingly, having determined that the affidavit for the search warrant possessed the requisite probable cause, we hold that the evidence seized from the residence pursuant to the search warrant was lawfully obtained and conclude there is no justification to suppress the items seized. Therefore, trial counsel was not ineffective for failing to seek suppression of the evidence on these grounds.

In his third issue, Fill argues that trial counsel was ineffective for failing to seek suppression of evidence because the search warrant was premised on false statements from the affiant officer. Fill posits "that the affiant officer made statements that the prosecuting attorney knew or had reason to believe were false." Appellant Brief at 22. Specifically, Fill takes umbrage with Trooper Sipko's statement that Fill "fired a weapon from the first floor window and the shot was fired in Trooper Deitle's direction." *Id*. Fill claims that Trooper Sipko's statement was inaccurate because "Trooper Deitle testified at trial that he did not see any part of a weapon and did not recover any bullets and did not testify about hearing a bullet go past him, and was not struck or injured by any bullet or other object." *Id*. (citing N.T., 11/7/16, at 35-36).

Our review of the record belies Fill's characterization of Trooper Deitle's testimony. At trial, Trooper Deitle offered a detailed explanation of the circumstances of the incident. He stated that he participated in forming the perimeter around the residence and indicated that he was on the north side of the structure. N.T., 11/6/16, at 35. Trooper Deitle then stated the following: "After that perimeter was set, it was – posted on the house watching any movement. A small window was opened while I was watching the house. I could not see anything come out the window, but it sounded like a gunshot was fired out that window. And just as quickly as it was opened, shot fired, and the window was shut again." *Id*. He also indicated that he was about thirty yards from the window. *See id*. Regarding whether the sound that he

heard was indeed a firearm, Trooper Deitle stated, "I have no doubt in my mind that it was a gunshot." *Id*. at 36. This evidence of record contradicts Fill's assertion that the prosecution knew or had reason to believe that the information in the affidavit of probable cause was inaccurate. Rather, Trooper Deitle's testimony supports the statements presented by Trooper Sipko in the affidavit of probable cause. Consequently, we discern no merit to Fill's claim that trial counsel was ineffective for failing to seek suppression on these grounds.

Next, Fill claims that trial counsel was ineffective for failing to seek the suppression of items seized that were not listed on the search warrant. Fill argues that "the chain saw, the alleged marijuana and smoking pipe were not described in the search warrant, which only authorized a search for weapons. Therefore, seizure of those objects was not justified under the warrant requirements." Appellant's Brief at 24. Again, we disagree.

The plain view doctrine allows the admission of evidence seized without a warrant when: (1) an officer views the object from a lawful vantage point; (2) it is immediately apparent to him that the object is incriminating; and (3) the officer has a lawful right of access to the object. *See Commonwealth v. Collins*, 950 A.2d 1041, 1045 (Pa. Super. 2008) (*en banc*) (citation omitted).

In determining whether the incriminating nature of an object is immediately apparent, we look to the totality of the circumstances. *See*

*Commonwealth v. Johnson*, 921 A.2d 1221, 1223 (Pa. Super. 2007). An officer can never be completely certain that a substance in plain view is incriminating, but his belief must be supported by probable cause. *See id*.

When reviewing whether an object's criminal nature is "immediately apparent," we note that probable cause

> merely requires that the facts available to the officer would warrant a man of reasonable caution in the belief, that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false. A practical, non-technical probability that incriminating evidence is involved is all that is required.

*Commonwealth v. McEnany*, 667 A.2d 1143, 1148 (Pa. Super. 1995) (citations, emphasis, and quotation marks omitted).

We begin by observing that Fill misinterprets the mandate of the search warrant at issue, which specifically states that the items to be searched for and seized include "firearms in possession of [Fill] and any other fruits of a crime." Search Warrant and Affidavit of Probable Cause, 1/3/15, at 1. Accordingly, his insinuation that the items listed were not encompassed by the warrant is false.

Moreover, our review reveals that the items were all spotted in plain view during the execution of the search warrant. Six of the jars of marijuana were located immediately inside of the front door on and inside of a green duffle bag. *See* N.T., 11/7/16, at 51-52. A seventh mason jar of marijuana

was discovered on the kitchen counter. *See id*. at 52. The "water bong or smoking pipe of some kind" was on the kitchen counter next to the seventh mason jar. *Id*. The incriminating nature of these items was readily apparent. Finally, Trooper Sipko indicated that he discovered the chainsaw outside on a patio table next to a shed. *See id*. at 53. The incriminating nature of the chainsaw was readily apparent given Corporal Wargo's observation of the downed utility pole.

Given these facts, we find that the mason jars, the pipe and the chainsaw fall within the plain view doctrine and were properly seized by law enforcement without being listed on the search warrant. The state troopers lawfully entered the home pursuant to a search warrant; the items in question were all visible; and due to their incriminating nature, the police were entitled to seize them. *See Jones*, 988 A.2d at 658. Consequently, there is no merit to the underlying issue that trial counsel should have sought suppression of the mason jars, the smoking pipe, and the chainsaw. Accordingly, Fill's allegation of ineffective assistance in this regard fails.

Finally, Fill argues that the PCRA court erred in failing to hold an evidentiary hearing. However, a PCRA hearing is not a matter of right, and the PCRA court may decline to hold a hearing if there is no genuine issue concerning any material fact and the defendant is not entitled to relief as a matter of law. *See Commonwealth v. Morrison*, 878 A.2d 102, 109 (Pa. Super. 2005); Pa.R.Crim.P. 907(2). *See Commonwealth v. Payne*, 794

A.2d 902, 906 (Pa. Super. 2002) (the right to a hearing is not absolute, and the PCRA court may deny a petition without a hearing if it determines the claims raised are without merit).

Here, the record belies Fill's claims that his trial counsel was ineffective. As discussed above, the record supports the PCRA court's factual finding there was no relief due based on the ineffectiveness claims raised. Accordingly, an evidentiary hearing was not required.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  05/31/2022